PEOPLE v HARGROVE

1. Homicide—Murder—First-Degree Murder—Elements of Offense—Preliminary Examination—Reasonable Doubt.

A defendant was properly bound over for trial for first-degree murder where testimony at the preliminary examination indicated the presence of premeditation and the elements of the offense were shown independently of a statement of the defendant wherein he claimed self-defense; the elements of the offense need not be established beyond a reasonable doubt at a preliminary examination.

2. Criminal Law—Preliminary Examination—Conflicting Testimony—Jury.

An examining magistrate may evaluate conflicting testimony for the purpose of holding an accused for trial, and it is for the jury at trial to resolve those conflicts.

3. Witnesses—Criminal Law—Infants—Competency—Statutes.

The burden of inquiry respecting the competency of a five-year-old child to testify is placed by statute solely upon the court; a defendant's attorney was therefore properly precluded from questioning the minor witness in this regard (MCLA 600.2163).

4. Homicide—Murder—Evidence—Photographs—Admissibility—Discretion.

A photograph of the deceased was properly admitted into evidence, in a trial for first-degree murder, where the photograph was not a close-up of the body, did not show the wound and was not inflammatory, and where the purpose of the offer, its probable value, and its possible prejudice were argued by

References for Points in Headnotes
[1, 2] 21 Am Jur 2d, Criminal Law § 440 et seq.
[3] 58 Am Jur 2d, Witnesses § 129 et seq.
[4] 40 Am Jur 2d, Homicide §§ 289, 417–419.
　Admissibility in evidence of enlarged photographs or photostatic copies. 72 ALR2d 308.
[5] 75 Am Jur 2d, Trial §§ 906–918.
[6] 75 Am Jur 2d, Trial § 1013.

counsel, and the trial judge had considered the arguments and exercised his discretion.

5. TRIAL—INSTRUCTIONS TO JURY—SUPPLEMENTAL INSTRUCTIONS—OB-
    JECTIONS—COURT RULE.

    The purpose of a court rule which allows a trial court to give further instructions to the jury while it is deliberating and provides that objections to such instructions shall be made in a motion for new trial, is to give the trial court an opportunity to consider the question raised as to the instruction, and this purpose was met where the objection was considered before the supplemental instruction was given (GCR 1963, 516.4).

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—SUPPLEMENTAL INSTRUC-
    TIONS—DEADLOCKED JURY—COERCION.

    A supplemental instruction given to a jury in a criminal case after it had informed the judge that it was unable to reach a decision was not coercive, where the jury had deliberated only a few hours after a long trial and the judge advised the jury of the practical necessity and prudence of further deliberation, and where he did so fairly, assuring the jury that they could have as much time as necessary to reach their verdict.

Appeal from Recorder's Court of Detroit, Clarence Laster, Jr., J. Submitted Division 1 December 5, 1974, at Detroit. (Docket No. 17816.) Decided January 7, 1975.

Walter L. Hargrove was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and William A. House, for the people.

*Daggs, Nelson & Berg,* for defendant on appeal.

Before: J. H. GILLIS, P. J., and V. J. BRENNAN and PETERSON,* JJ.

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

PETERSON, J. Defendant was charged with the first-degree murder of his wife, MCLA 750.316; MSA 28.548, tried by jury, convicted, on May 24, 1973, of second-degree murder, MCLA 750.317; MSA 28.549, sentenced to a term of imprisonment, and appeals.

His contention that the examining magistrate erred in binding him over for trial after preliminary examination is without merit. An examination of the record of the preliminary examination discloses that, contrary to his assertion, the elements of first-degree murder were established independently of a statement of defendant wherein he admitted the act of killing but claimed self-defense. The testimony of a friend that defendant had called him on the morning of the crime, stating an intention to kill his wife, is sufficient proof of premeditation to warrant that he be bound over for trial for murder in the first degree. Nor need the people establish these elements beyond a reasonable doubt at preliminary examination. See *People v Asta,* 337 Mich 590; 60 NW2d 472 (1953), *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), cf. *People v Allen,* 39 Mich App 483; 197 NW2d 874 (1972). Defendant cites no authority for his argument that the mere receipt in evidence of his statement claiming self-defense precludes the examining magistrate from the finding of malice and premeditation necessary to bind him over for trial on first-degree murder. To the contrary, the examining magistrate may evaluate the conflicting testimony for the purpose of holding the accused for trial; it is for the jury at trial to resolve those conflicts. *People v Weiden,* 239 Mich 169; 214 NW 120 (1927).

Defendant also contends that the trial judge committed error in allowing defendant's five-year-

old daughter to testify because defense counsel was precluded from questioning the child respecting her competency in view of her tender years.[1]

MCLA 600.2163; MSA 27A.2163, provides:

"Whenever a child under the age of 10 years is produced as a witness, the court shall by an examination made by itself publicly, or separate and apart, ascertain to its own satisfaction whether such child has sufficient intelligence and sense of obligation to tell the truth to be safely admitted to testify; and in such case such testimony may be given on a promise to tell the truth instead of upon oath or statutory affirmation, and shall be given such credit as to the court or jury, if there be a jury, it may appear to deserve."

This is a reenactment of 1887 PA 82, which in turn was a codification of the ruling and recommendation of the court in *Hughes v Detroit, G H & M R Co,* 65 Mich 10; 31 NW 603 (1887). In requiring the court to conduct an examination "made by itself", the statute confirms that part of *Hughes* wherein the burden of the inquiry was put solely on the court and inquiry by counsel was held improper. There was no error.

Defendant next claims error by showing the jury a photograph of the deceased which was neither offered nor received in evidence and which was inflammatory and prejudicial. The words of the trial judge received only exhibits 1 through 16. The photograph, exhibit 17, was one of a number of exhibits offered simultaneously by the prosecuting attorney. Defendant objected only to exhibit 17. The purpose of the offer, its probative value and the possible prejudice were argued by counsel. The trial judge then showed that he had consid-

---

[1] The further claim of defendant that the statute requires a *public* examination of the child is a misstatement of the statute, unsupported by citation, and frivolous.

ered the arguments and exercised his discretion.[2] He concluded his discussion of exhibit 17, saying:

"I'll receive it, allowing Exhibit 1 through 16—unless you want to cross-examine him some more about the taking of the picture and so forth; do you wish to cross-examine further?"[3]

It is clear that the trial judge did find exhibit 17 admissible and received it, merely misspeaking by referring to exhibits 1 through 16 instead of exhibits 1 through 17.

Lastly,[4] defendant contends that a supplemental instruction given to the jury coerced the verdict of guilty of second-degree murder. The *Allen*-type charge[5] given here has since been considered in *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974). Though not found to be coercive per se, its potential as a coercive influence was recognized,[6] and inquiry must be made as to whether it was in fact coercive in each particular case. We do so notwithstanding apparent noncompliance with GCR 1963, 516.4, which says:

---

[2] *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972). The course of trial indicated that the photograph did have substantial probative worth. The photograph itself was not a close-up of the body, does not show the wound and was not inflammatory. Its admission was not an abuse of discretion.

[3] There was no further cross-examination. Trial transcript of May 21, 1973, pp 155, 156.

[4] We may summarily dispose of a claim of prejudicial argument by the prosecuting attorney. A veiled reference to Detroit's homicide rate, while improper, was neither flagrant nor prejudicial. The other mistake claimed does not seem improper and no objection was made thereto.

[5] *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

[6] Prospectively, *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974), mandates instruction, before the jury commences deliberation, as recommended by standard jury instruction 5.4 recommended by the ABA Project on Minimum Standards for Criminal Justice.

"While the jury is deliberating the court may in its discretion further instruct the jury, in the presence of or after notice to counsel. Objections thereto shall be made in a motion for new trial."

The purpose of the rule is to provide the same opportunity for the trial court to consider the question raised as to the supplemental instruction as is afforded by GCR 1963, 516.2 and 516.3, which require objections to the court's basic instructions and preliminary instructions to be made before the jury retires. Where, as here, the objection is heard *before* the supplemental instruction has been given, that purpose has been met.

The trial consumed five days of testimony. After argument and instruction, the jury commenced its deliberations at 10:32 a.m. The trial judge commented that the jury would be required to deliberate beyond four o'clock in the afternoon. There was a luncheon break and, after resuming its deliberations, the jury requested further instructions on second-degree murder and manslaughter at 2:22 p.m. Late in the afternoon, the jury sent a note to the judge that it was unable to arrive at a decision, and at 5:52 p.m. the jury was called back and given the instruction of which defendant complains. At 6:32, the verdict was returned.

We think it was entirely proper in these circumstances for the court to point out to the jury the relatively short time they had deliberated considering the duration and importance of the trial. Indeed, absent some expression from the jury of absolute impossibility of further deliberation, it would seem that he had a duty to respond to the jury's message by advising them of the practical necessity and prudence of further deliberation. Having undertaken to do so, he did so fairly and went on to assure the jury that they could have as

much time as necessary, even if it meant return-
ing another day, noting that he was not going to
keep them all night. The effect was not coercive.

Affirmed.

All concurred.